James N. Saul (OSB #152809)
Wild & Scenic Law Center
3519 NE 15th Ave., #207
Portland, OR 97212
(503) 342-2839
jamie@wildandsceniclaw.org

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL DEFENSE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>CASCADE AUTO RECYCLING LLC,<br><br>Defendant. | Case No. 1:26-cv-00086<br><br>COMPLAINT<br><br>Federal Clean Water Act<br>(28 U.S.C. § 1331 and 33 U.S.C. § 1365(a)) |

### INTRODUCTION

1.     This is a complaint for injunctive and declaratory relief and civil penalties under the Federal Water Pollution Control Act, commonly known as the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("CWA" or "Act"). Plaintiff Northwest Environmental Defense Center ("NEDC") brings this suit under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), to abate defendant's ongoing pollution and the degradation of Skunk Creek and the Rogue River in Josephine County, Oregon.

COMPLAINT - Page 1

2.      Defendant Cascade Auto Recycling LLC ("Cascade") is a domestic corporation based in Grants Pass, Oregon. Cascade owns and operates a metal recycling facility under the assumed business name of Cascade Metal Recycling.

3.      Cascade generates pollution, including aluminum, copper, zinc, lead, and excess chemical oxygen demand, among other pollutants, which are routinely discharged from its recycling facility into the Grants Pass municipal stormwater system, which then discharges into Skunk Creek and the Rogue River. Additionally, the facility has historically discharged into Jones Creek, which discharges Plaintiffs believe ceased in 2023.

4.      Cascade is authorized to discharge stormwater associated with industrial activity by a permit issued by the Oregon Department of Environmental Quality (DEQ) pursuant to the CWA's national pollutant discharge elimination system. *See* 33 U.S.C. § 1342. That permit imposes various requirements, conditions, and limitations on Cascade's industrial activities and its discharges of pollutants into Skunk Creek, several of which have been regularly violated by Cascade since at least July 22, 2021.

5.       Cascade's violations of the CWA are ongoing, and will remain ongoing absent relief from this Court. These violations have and continue to cause cognizable injury to NEDC and its members, and warrant the imposition of civil penalties and injunctive relief.

COMPLAINT - Page 2

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). The requested relief is authorized by 33 U.S.C. § 1319(d) and 1365(a).

7.     Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to the claims alleged herein occurred in Josephine County, which is located within this judicial district.

8.     As required by the CWA, 33 U.S.C. § 1365(b), by letter dated July 22, 2024, NEDC provided Cascade with notice of its intent to file suit to abate the violations alleged herein. A copy of that letter is attached hereto as Exhibit A, and is hereby incorporated in its entirety into this complaint.

9.     As required by 40 C.F.R. § 135.2(a)(1), NEDC sent copies of its notice letter to the Administrator of the U.S. Environmental Protection Agency (EPA), the Regional Administrator for EPA Region 10, and the Director of the DEQ.

10.     More than sixty days have passed since NEDC's notice of intent to sue was given to the proper parties, and Cascade continues to violate its discharge permit and the CWA. Neither the EPA nor DEQ has commenced or is diligently prosecuting a civil or criminal action to abate the violations alleged in this complaint.

## PARTIES

11.     Plaintiff NEDC is a membership organization suing on behalf of itself and its members. NEDC is an independent, non-profit organization organized and

COMPLAINT - Page 3

existing under the laws of the State of Oregon. NEDC maintains its principal place of business in Multnomah County, Oregon. The mission of NEDC is to preserve and protect the natural environment of the Pacific Northwest. Since 1969, the staff, student volunteers, and members of NEDC have advocated for cleaner water and air, and for the preservation of public lands and wildlife across the Pacific Northwest.

12.    Several of NEDC's members regularly use and enjoy the waters of the Rogue River—the waterbody into which Cascade discharges pollution by way of the stormwater system and Skunk Creek. NEDC's members also have future plans to continue using these waters for recreational, aesthetic, spiritual, conservation, educational, and other purposes. These members enjoy walking along and recreating along the Rogue, and enjoy fishing, boating, wading, and hiking along the Rogue River downstream from Cascade's facility. These members have observed signs of or otherwise experienced degraded water quality attributable in part to pollution discharged by the Cascade facility, or have experienced reasonable concern for degraded water quality, and as a result their enjoyment of the Rogue River has been diminished.

13.    Unless the requested relief is granted, Cascade's CWA violations will continue unabated and will continue to injure NEDC's and its members' aesthetic, recreational, and other interests in Skunk Creek and the Rogue River, and the aquatic life those waters support.

COMPLAINT - Page 4

14.    Defendant Cascade Auto Recycling LLC is an Oregon limited liability company that owns and operates a metal recycling facility under the assumed business name of Cascade Metal Recycling ("Cascade") and is referenced to herein as the same. Cascade's facility is located at 2207 Northeast Industry Drive, Grants Pass (the "Facility").

## LEGAL BACKGROUND

15.    Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a)(1). To further this goal, Congress instructed the states, subject to EPA oversight, to establish water quality standards applicable to the waters within each state's boundaries. 33 U.S.C. § 1313(c).

16.    Section 301(a) of the CWA prohibits the discharge of any pollutant by any person unless the discharge is authorized under one of the Act's permitting programs, including the national pollutant discharge elimination system ("NDPES") program created by section 402 of the Act, 33 U.S.C. § 1342. NPDES permits are the primary means of authorizing, and controlling, so called "point source" discharges of pollutants to our nation's surface waters.

17.    Although EPA is the primary administrator of the CWA, section 402(b) allows EPA to authorize states to administer the NPDES permit program. 33 U.S.C. § 1342(b). Oregon is such an authorized state, and DEQ issues NPDES permits within the State of Oregon under Oregon Administrative Rules ("OAR") Chapter

COMPLAINT - Page 5

340, Division 45 and various state and EPA regulations governing NPDES permit issuance.

18.    NPDES permits typically include a suite of numeric or narrative technology-based and water quality-based effluent limitations that restrict the rate and quantity of pollutants the permitted facility may discharge. Where the broadly applicable technology-based limitations are not sufficient to protect water quality, NDPES permits must include "any more stringent limitation … necessary to meet water quality standards[.]" 33 U.S.C. § 1311(b)(1)(C). NPDES permits may only be issued where they "insure compliance with" applicable state water quality standards. *Id.* § 1342(b)(1)(A); 40 C.F.R. § 122.4(d).

19.    Section 505 of the CWA authorizes citizens to bring a civil action against any person who is alleged to be in violation of an effluent standard or limitation under the CWA. 33 U.S.C. § 1311(b)(1)(C). An effluent standard or limitation includes "a permit or condition thereof issued under" CWA Section 402, i.e., an NPDES permit. *Id.* at 1365(f)(6). This citizen enforcement authority extends to both numeric and narrative permit conditions. *Id.* at 1365(a)(1); *see also Nw. Env't Advocs. v. City of Portland,* 56 F.3d 979 (9th Cir. 1995).

## GENERAL FACTUAL ALLEGATIONS

## A.    The Cascade Facility and the Rogue River

20.     At the Facility, Cascade performs metal recycling activities under standard industrial code (SIC) 5093, which covers handling of scrap and waste materials. According to the Facility's Stormwater Pollution Control Plan ("SWPCP")

COMPLAINT - Page 6

dated December 28, 2021, the Facility also provides scrap metal hauling services and sells used tires in addition to its recycling operations.

21.     Until 2023, Cascade collected and conveyed stormwater from two drainage areas. The first area drains the Facility's main lot at 2207 NE Industry Drive. The stormwater associated with this area discharges into the City of Grants Pass's municipal stormwater system, which then discharges into Skunk Creek, which flows into the Rogue River. Cascade's Facility once included a second drainage basin on leased property at 2251 NE Spalding Avenue; upon information and belief, NEDC understands that Cascade ceased operations on the leased property in 2023.

22.     According to the December 2021 SWPCP, Cascade is currently operating only on the Facility's main lot, comprising one drainage area with one discharge location. Roof runoff is collected and drained via 12 building downspouts and discharged to paved ground surfaces. Stormwater from these impervious surfaces is collected and eventually discharges to the Grants Pass municipal stormwater system. This storm drain conveys the stormwater a distance about 1.3 miles before the municipal storm system drains into Skunk Creek.

23.     Among pollutants found in Cascade's stormwater are heavy metals, including aluminum, copper, iron, lead, and zinc; total suspended solids; organic compounds; chemical oxygen demand ("COD"); and oil and grease. Copper, lead, and Zinc are regulated as toxic pollutants under the CWA. *See* 40 C.F.R. § 401.15. These

COMPLAINT - Page 7

pollutants cause significant harm to aquatic life, including salmon and trout, and can be fatal in sufficient concentrations.

24.    The site plan below, taken from Cascade's SWPCP dated December 28, 2021, depicts the Facility and its stormwater drainage areas and patterns:



25.     Skunk Creek is a small, approximately 1.2 mile long, tributary of the Rogue River. Skunk Creek is almost completely channelized, covered with impervious surface, and functions much like a conveyance channel directing water and pollution into the Rogue River.

26.     The Rogue River, which receives the Facility's stormwater, supports populations of anadromous fish, including coho and Chinook salmon, winter and summer steelhead, and rainbow and cutthroat trout, among other fish and aquatic species.

27.     This receiving segment of the Rogue is currently on Oregon's list of impaired waters for several parameters including temperature and turbidity (meaning the water does not meet applicable water quality standards for those parameters), and is unable to support a number of the River's designated beneficial uses, including the use of supporting aquatic life.

28.     The Rogue River provides myriad recreational and aesthetic benefits to the public, including several NEDC members who live or recreate in the Rogue River watershed.

29.     The Rogue River flows more than 200 miles from near Crater Lake to the Pacific Ocean, and is one of the original eight rivers protected by the Wild and Scenic Rivers Act of 1968. The Rogue River is home to a diverse variety of aquatic species, and many of its native salmon and steelhead species have been identified as "species of concern" by NOAA Fisheries or as "sensitive species" by the Oregon Department of Fish & Wildlife because of their depressed numbers. Coho salmon

COMPLAINT - Page 9

have been listed as threatened under the Endangered Species Act, and populations of spring Chinook salmon are in precipitous decline.

30.     The Rogue River provides many recreational, aesthetic, and other benefits to the public and certain NEDC members who use and enjoy the river for fishing, boating, wildlife observation, and study, among other activities.

**B.      Applicable Requirements of DEQ's 1200-Z Permit**

31.     Among the NPDES permits issued by DEQ is Industrial Stormwater Discharge Permit No. 1200-Z (the "Permit"), a general permit used to authorize and regulate discharges of stormwater runoff associated with industrial activity from many industrial facilities throughout Oregon. The Permit was last reissued by DEQ in 2021 with an effective date of July 1, 2021. This version of the Permit remains in effect today.

32.     The Permit is a permit issued pursuant to CWA section 402, 33 U.S.C. § 1342, and its terms and conditions may be enforced under the Act's citizen-suit provision at 33 U.S.C. § 1365.

33.     The Cascade Facility is presently, and at all times relevant to this action has been, authorized to discharge stormwater associated with industrial activity from the Facility under the Permit so long as those discharges are in compliance with the terms, conditions, and effluent limitations contained in that permit.

34.     The Permit requires permit registrants to prepare, implement, and update as needed a Stormwater Pollution Control Plan ("SWPCP"). SWPCPs must

provide for adequate pollution controls to eliminate or minimize the exposure of stormwater to pollutants found on site and must establish water quality sampling, reporting, and recordkeeping procedures for the site.

35.     The Permit establishes numeric benchmarks for various pollutants of concern. DEQ uses these benchmarks to assess the effectiveness of a permit registrant's SWPCP and other pollution control measures. In certain cases, exceedance of a benchmark concentration triggers mandatory corrective actions under the Permit.

36.     The Permit prohibits the discharge of pollutants that cause or contribute to a violation of applicable water quality standards.

## C.    Cascade's History of Violations of the 1200-Z Permit at the Facility

37.     Since at least July 22, 2021, Cascade has committed numerous violations of the Permit and, thus, the Clean Water Act. These violations are particularly described in the accompanying Notice Letter, which is hereby incorporated by reference into this complaint and made a part thereof as if it were restated in its entirety.

38.     Each discrete violation of the Permit alleged below and in the accompanying Notice Letter constitutes a separate and distinct violation of the Clean Water Act, warranting its own relief by this Court.

39.     Each discrete violation of the Permit specifically alleged below and in the accompanying Notice Letter remain ongoing and, absent relief from this Court, is likely to recur in the future.

COMPLAINT - Page 11

**FIRST CLAIM FOR RELIEF:**

**Violations of Narrative Technology-Based Effluent Limitations and
Related Control Measures of the 1200-Z Permit
(Conditions A.1, A.2, and Schedule E)**

40.    The allegations of each preceding paragraph are incorporated herein as if restated in full.

41.    Condition A.1 of the Permit contains a suite of narrative, technology-based effluent limitations that require Cascade to, *inter alia,* "minimize exposure of manufacturing, processing, [and] material storage areas…to rain, snow, snowmelt and runoff"; ""to minimize generation of dust and off-site tracking and discharge of soil, particulates and raw, final or waste materials"; and "routinely clean all exposed areas that may contribute pollutants to stormwater[.]"

42.    Condition A.2.a of the Permit requires Cascade "to select, design, install, implement and maintain control measures . . . to meet the narrative and numeric technology based effluent limits in Schedule A.1 and Schedule E . . . of this permit and [to] describe these measures . . . in the SWPCP."

43.    Condition A.2.b of the Permit requires Cascade to "reduce or eliminate pollutants to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice."

44.    Condition E.N.1 of the Permit identifies additional sector-specific requirements that Cascade must meet, including additional requirements related

COMPLAINT - Page 12

to, for example, good housekeeping measures, measures for managing stockpiled materials, and spill prevention and response procedures.

45. The Permit benchmarks are screening concentrations indicative of "whether site controls are effectively reducing pollutant concentrations in stormwater discharges" as required by Conditions A.1., A.2., and E.

46. Condition B.2 of the Permit establishes the following statewide benchmarks applicable to Cascade: total copper 0.017 mg/L; total lead 0.039 mg/L; total zinc 0.086 mg/L; pH 5.5-9.0 s.u.; and total suspended solids 100 mg/L.

47. Additionally, Condition E.N.3 of the Permit establishes the following sector-specific benchmarks applicable to Cascade: total aluminum 1.10 mg/L; and Chemical Oxygen Demand (COD) 120 mg/L; total copper 0.017 mg/L; total lead 0.039 mg/L; total zinc 0.086 mg/L; and total suspended solids 100 mg/L.

48. As shown in Table 1 on page 7 of the attached Notice Letter, Cascade has repeatedly, and often significantly, discharged the pollutants aluminum, copper, zinc, lead, chemical oxygen demand ("COD"), and pH in excess of the benchmarks established by the Permit. These benchmark exceedances have been documented by Cascade itself at Outfall 001 and, prior to 2024, Outfall 002 at the Facility.

49. Cascade's long history and pattern of repeated benchmark exceedances indicate that it has violated, and continues to violate, the narrative technology-based effluent limits in Conditions A.1 and E.N.1 of the Permit, and has failed to

COMPLAINT - Page 13

select, design, install, implement, and maintain control measures necessary to meet those benchmarks, in violation of Condition A.2.a of the Permit.

50.    Indeed, several specific instances of Cascade's violations of Condition A.1 of the Permit were documented by DEQ staff during a Facility inspection which occurred on March 26, 2025. These violations include, for example, the documented failure to minimize exposure per Condition A.1.a of the Permit as evidenced by sediment coverage throughout much of the Facility's paved areas and catch basins, and failure to implement preventative maintenance measures as evidenced by the Facility's documented failure to properly maintain catch basins, failure to place filters around catch basins, and the failure to perform general weeding around the stormwater detention pond, all in violation of Condition A.1.i. of the Permit. The full extent of DEQ's documented violations from the March 26, 2025 inspection are discussed on Page 5 of the Notice Letter and incorporated by reference herewith.

51.    DEQ's documented violations of Condition A.1 also constitute a violation of Conditions A.2.a and A.2.b of the Permit because on that day (March 26, 2025), Cascade failed to comply with the Permit's narrative technology-based effluent limitations.

52.    These violations have occurred each and every day since July 22, 2021 and are ongoing and likely to recur.

53.    Additionally, the history and pattern of significant benchmark exceedances demonstrate that Cascade's site controls are not effectively minimizing pollutants in stormwater discharged from the Facility, and are not reducing or

COMPLAINT - Page 14

eliminating pollutants to the extent achievable, in violation of Condition A.2.b of the Permit.

54. These violations have occurred each and every day since July 22, 2021 on which there was 0.1 inch or more of precipitation at the Facility (*see* Notice Letter, Appendix A) because, on information and belief, on those days Cascade discharged pollutants in stormwater from the Facility and had not reduced or eliminated those pollutants to the extent achievable.

**SECOND CLAIM FOR RELIEF:**

**Violations of the SWPCP Requirements in the 1200-Z Permit
(Conditions A.2.a, A.8.c, A.8.d, and A.10)**

55. The allegations of each preceding paragraph are incorporated herein as if reinstated in full.

56. Condition A.2.a of the Permit requires Cascade to describe its pollutant control measures, maintenance schedules, and the frequency of housekeeping measures in its SWPCP.

57. Condition A.8.c of the Permit requires Cascade to include in its SWPCP each narrative technology-based effluent limit to eliminate or reduce the potential to contaminate stormwater and prevent any violation of instream water quality standards.

58. Condition A.10 of the Permit sets forth the requirements for SWPCPs, including in Condition A.10.b.vi of the Permit, the requirement that SWPCPs include a description of control measures installed and implemented to meet the

COMPLAINT - Page 15

technology and water quality-based requirements in Condition A.1-A.4 and any applicable sector-specific requirements in Schedule E.

59.    Condition A.8.d of the Permit requires Cascade to implement the SWPCP and any revisions to it.

60.    At its March 26, 2025 inspection, DEQ staff documented several instances in which Cascade has failed and is failing to implement its SWPCP in violation of Condition A.8.d of the Permit. On that date, Cascade was failing to implement several stormwater pollution controls described in Section 7.0 of Cascade's June 21, 2021 (revised December 28, 2021) SWPCP, including its own required preventative maintenance actions, actions required to minimize exposure of pollutants to stormwater, actions required to control oil and grease, actions to properly recycle or dispose of waste chemicals and other materials, actions required to control erosion and sediment at the Facility, actions required to control debris, several housekeeping measures, implementation of Cascade's spill prevention and response measures plan, and required stormwater system maintenance and cleaning actions. Further, Cascade had failed to implement the required employee stormwater education and training program described in Section 6.0 of the Facility's SWPCP. Each of these failures to implement measures or practices described in the SWPCP constitutes a violation of Schedule A.8.d of the Permit.

61.    Cascade violated Conditions A.2.a, A.8.c, A.10, and A.8.d of the Permit each and every day since July 22, 2021 by failing to maintain and implement an adequate SWPCP at the Facility.

COMPLAINT - Page 16

62.    The extensive benchmark exceedances documented in the Notice Letter in Table 1, the extensive water quality violations described herein, and ongoing discharges of polluted industrial stormwater from the Facility demonstrate that Cascade is not maintaining or implementing a SWPCP that includes adequate control measures and all of the required SWPCP components.

63.    On each and every day since July 22, 2021, Cascade has operated with an inadequate SWPCP. Each such day of operation is a separate violation of Condition A.2.a, A.8.c, A.10, and A.8.d of the Permit as applicable. These violations are ongoing and likely to recur.

### THIRD CLAIM FOR RELIEF:

**Violations of the 1200-Z Permit's**
**Monitoring, Reporting, and Inspection Requirements**
**(Conditions B.2, B.6, B.7.f, B.12, B.13, B.14, and E.N.3)**

64.    Condition B.2 of the Permit requires the permit registrant to monitor stormwater discharges for various statewide benchmarks, including pH, total copper, total lead, total zinc, and total suspended solids.

65.    Condition B.6 of the Permit emphasizes that the "permit registrant must monitor for: the applicable statewide benchmark pollutants identified in [Table 4 of the] permit," in addition to any applicable sector-specific pollutants. For Cascade, pursuant to Condition E.N.3, the Facility must monitor for aluminum and chemical oxygen demand, in addition to total suspended solids, total copper, total lead, and total zinc, which are also statewide benchmark parameters for the Facility.

COMPLAINT - Page 17

66. Condition B.7.f and Table 6 of the Permit require Cascade to monitor for these pollutants "[f]our times a year, two samples between January 1 and June 30, and two samples between July 1 and December 31."

67. Conditions B.13 and B.14 of the Permit require Cascade to submit all monitoring results to DEQ via Discharge Monitoring Reports ("DMRs"). These reports are due quarterly, on or before the deadlines set forth in Table 7 of the Permit.

68. Cascade violated the requirements of Schedule B of the Permit. Records made available to NEDC indicate that, during the 2021-2022 monitoring year, Cascade only took 3 of the 4 required samples for statewide parameters, and 3 out of the 4 required samples for the sector-specific parameters required by Schedule E of the Permit.

69. Similarly, during the 2022-2023 monitoring year, Cascade only took 2 out of the 4 required samples for statewide benchmark parameters and sector-specific parameters at Outfall 001, and only 3 of the 4 required samples for statewide benchmark parameters and sector-specific parameters at Outfall 002.

70. During the 2023-2024 monitoring year, Cascade only took 2 of the 4 required samples for statewide benchmark parameters and sector-specific parameters.

71. Finally, during the 2024-2025 monitoring year, Cascade only took 1 of the 2 required samples for the statewide benchmark and sector-specific parameters between July 1, and December 31, 2024.

COMPLAINT - Page 18

72.     Each of these failures to monitor for applicable statewide benchmarks and applicable sector-specific pollutants is a violation of Condition B.2 and B.7.f of the Permit.

73.     Cascade also violated reporting requirements set forth in Schedule B by failing to timely submit DMRs to DEQ in accordance with the dates set forth in Table 7 of the Permit. Cascade failed to submit DMRs on or before the following dates: August 15, 2022; November 15, 2022; February 15, 2023; May 15, 2023; August 15, 2023; November 15, 2023; February 15, 2024; May 15, 2024; August 15, 2024; and November 15, 2025. Each of these failures to submit a DMR by the applicable deadline constitutes a violation of Conditions B.13 and B.14.

74.     Condition B.12 of the Permit requires Cascade to perform monthly inspections of "areas where industrial materials or activities are exposed to stormwater and areas where stormwater control measures, structures, catch basins, and treatment facilities are located."

75.     Condition B.12.a.vi requires inspection to include "visual observation for the presence of floating and suspended solids, color, foam, visible oil sheen, or other obvious indicators of pollution in the stormwater discharge at all discharge point(s)[.]"

76.     Condition B.12.i of the Permit requires Cascade to document all inspections in an inspection report that includes certain specific information. These reports are to be retained on site and submitted to DEQ upon request.

COMPLAINT - Page 19

77. Cascade has violated these inspection requirements. During the March 25, 2026 DEQ inspection, DEQ staff documented that Cascade had failed to perform the required monthly or visual inspections.

78. Upon information and belief, NEDC alleges that Cascade has failed to perform monthly and visual inspections each and every month since obtaining coverage under the 1200-Z permit on July 22, 2021, in violation of Schedule B.12 of the Permit.

**FOURTH CLAIM FOR RELIEF:**

**Discharges in Violation of Water Quality Standards
Incorporated Into the 1200-Z Permit
(Conditions A.3.a and F.A6)**

79. The allegations of each preceding paragraph are incorporated herein as if restated in full.

80. Conditions A.3 and F.A6 of the Permit prohibits Cascade from discharging pollutants and stormwater associated with industrial activity in an amount or manner that causes or contributes to violations of the instream water quality standards established in Oregon Administrative Rule ("OAR") 340-041 for Skunk Creek and the Rogue River.

81. Condition A.3.a of the Permit prohibits Cascade from causing or contributing to a violation of instream water quality standards as established in OAR 340-041.

COMPLAINT - Page 20

82.    Condition F.A6 of the Permit requires Cascade to comply with any applicable effluent standards or prohibitions established under OAR 340-041-0033 for toxic pollutants.

83.    OAR 340-041-007(1) states that "the highest and best practicable treatment and/or control of wastes, activities, and flows must in every case be provided so as to maintain…toxic materials…at the lowest possible levels."

84.    OAR 340-041-0033(1) prohibits the introduction of toxic substances above natural background levels in concentrations and/or combinations that may be harmful to public health, safety, aquatic life, and wildlife.

85.    DEQ established these and other water quality standards to protect human health and other important beneficial uses such as recreation, drinking water sources, and habitat for salmon and steelhead. Or. Rev. Stat. §§ 468B.015, 468B.048.

86.    The Permit establishes benchmark concentrations for toxic pollutants including copper, zinc, aluminum, and lead. Table 30 in OAR 340-041-8033 identifies the concentrations of toxic pollutants that may be harmful to aquatic life.

87.    In its 2021 permit assignment letter to Cascade, DEQ incorporated the copper, zinc, aluminum, and lead criteria in Table 30 to establish benchmarks for those pollutants applicable to Cascade.

88.    Cascade has violated and continues to violate Conditions A.3.a and F.A6 of the Permit by discharging toxic pollutants from the Facility in amounts in

COMPLAINT - Page 21

or manners that cause or contribute to violations of the narrative and numeric water quality standards identified above.

89.    As indicated in Table 1 of the Notice Letter, discharges from the Facility routinely contain aluminum, copper, zinc, and lead in concentrations that both exceed applicable benchmarks and cause or contribute to violations of the water quality standards established narrative and numeric water quality standards identified above.

90.    These violations have occurred each and every day since July 22, 2021 on which there was 0.1 inch or more of precipitation at the Facility because, on information and belief, on those days Cascade discharged industrial stormwater from the Facility that contained copper, zinc, aluminum, and/or lead in excess of the benchmarks for those pollutants established by the Permit.

91.    As identified in Appendix A of the Notice Letter, there have been at least 263 dates in which there was at least 0.1 inch of precipitation at the Facility.

92.    At minimum, these violations occurred on each of the following dates when Cascade discharged stormwater and reported concentrations that exceed one or more of the Permit's benchmarks for toxic pollutants: December 13, 2021; December 28, 2021; April 4, 2022; November 1, 2022; March 29, 2023; May 2, 2023; October 25, 2023; January 26, 2024; October 30, 2024; January 31, 2025; and May 13, 2025.

93.    These violations are ongoing and likely to recur on each date where the Facility receives at least 0.1 inch of precipitation.

COMPLAINT - Page 22

94.     Further, Cascade has violated and continues to violate Condition F.A6 of the Permit by introducing toxic pollutants, including aluminum, copper, lead, and zinc above natural backgrounds in concentrations that may be harmful to public health, safety, aquatic life, and wildlife (OAR 340-041-0033(1)). These violations have occurred each and every day since July 22, 2021 on which there was 0.1 inch or more of precipitation at the Facility (*see* Notice Letter, Appendix A) because, on information and belief, on those days Cascade discharged industrial stormwater from the Facility that contained copper, zinc, iron, and/or aluminum in excess of the benchmarks or reference concentration for those pollutants established in the Permit. These violations are ongoing and likely to recur.

95.     Cascade has violated and continues to violate Condition F.A6 by failing to provide the highest and best practicable treatment and/or control of wastes, activities, and flows to maintain the lowest possible levels of toxic pollutants. As indicated in Table 1 of the Notice Letter, discharges from the Facility regularly contain elevated concentrations of the toxic pollutants copper, zinc, lead and aluminum, indicating that Cascade is not providing the highest and best practical treatments and controls at the Facility to maintain the lowest possible levels of toxic pollutants. These violations have occurred each and every day since July 22, 2021 on which there was 0.1 inch or more of precipitation at the Facility (*see* Notice Letter, Appendix A) because, on information and belief, on those days Cascade discharged industrial stormwater from the Facility that contained copper, zinc, iron,

COMPLAINT - Page 23

and/or aluminum in excess of the benchmarks for those pollutants established in the Permit. These violations are ongoing and likely to recur.

## FIFTH CLAIM FOR RELIEF:

### Violations of Requirements to Take Corrective Actions and Related Reporting Requirements of the 1200-Z Permit (Conditions A.3.b, A.11, and F.D6)

96.    The allegations of each preceding paragraph are incorporated herein as if restated in full.

97.    Condition A.11 of the Permit requires Cascade to undertake a Tier I corrective action response each time a stormwater monitoring result exceeds any statewide or sector-specific benchmark, or when visual observations show signs of pollution in the discharge.

98.    Specifically, that permit condition requires Cascade, within 30 days of obtaining monitoring results demonstrating a benchmark exceedance or completing a monthly visual inspection showing signs of pollution in the discharge, to: (1) investigate the cause of the elevated pollutant levels and develop a plan for controlling significant materials from previous operations; (2) review the SWPCP and evaluate the selection, design, installation and implementation of control measures to ensure compliance with the permit, including evaluating whether any previous pollutant source isolation actions are complete and whether additional modifications are necessary; (3) evaluate treatment measures, infiltration devices and mass reduction measures to see if they were properly installed, maintained and implemented and whether maintenance, correction or modifications are necessary;

COMPLAINT - Page 24

and (4) assess and implement these corrective actions at all substantially similar discharge points.

99.    As required by Condition A.11.c.v of the Permit, a Tier I report must include (1) the results of Cascade's investigation into the cause of elevated pollutant levels; (2) corrective actions taken or to be taken, or, if determined that no corrective action is necessary, the basis for this determination; and (3) documentation of whether SWPCP revisions are necessary.

100.    Condition A.11.d.i of the Permit requires Cascade to implement necessary corrective actions before the next storm event, if possible, or no later than 30 days after receiving the monitoring results, whichever comes first.

101.    Cascade has routinely violated Conditions A.11.c. and A.11.d of the Permit by either failing to complete a Tier I corrective action response, including a Tier I corrective action report, or by failing to perform an adequate corrective action response, including by submitting inadequate Tier I corrective action reports.

102.    The history and pattern of ongoing and significant benchmark exceedances demonstrated in Table 1 of the Notice Letter indicate that Cascade has repeatedly failed and is presently failing to (a) perform adequate investigations of the cause of benchmark exceedances; (b) perform a sufficient review of its SWPCP and evaluation of the selection, design, installation and implementation of its control measures; (c) evaluate the Facility's treatment measures and determine whether maintenance, correction, or modifications to those measures are necessary;

COMPLAINT - Page 25

and (d) implement adequate and necessary corrective actions before the next storm event or no later than 30 days after receiving the monitoring results.

103.    These violations have occurred each and every day since July 22, 2021, and are ongoing and likely to recur.

104.    Similarly, Condition A.3.b of the Permit requires Cascade to take certain actions upon becoming aware that a discharge from the Facility caused or contributed to an exceedance of water quality standards, including (1) investigating the conditions that triggered the violation; (2) reviewing the SWPCP to ensure compliance with the permit; (3) submitting a Water Quality Standards Corrective Action report to DEQ within thirty days of receiving the relevant monitoring data, which report must meet certain criteria stated in the Permit; and (4) implementing any required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first.

105.    Cascade has routinely caused or contributed to an exceedance of narrative water quality standards for several toxic pollutants as described above. On each of these instances, Cascade has violated Condition A.3.b of the Permit by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions.

106.    Cascade violated these requirements each and every day since July 22, 2021 by failing to implement Tier I corrective action responses in the required time frame; failing to review the SWPCP to ensure compliance with the permit; failing to submit each and every required Water Quality Standards Corrective Action report

COMPLAINT - Page 26

to DEQ within thirty days of receiving the relevant monitoring data; and failing to implement required corrective actions before the next storm event or within thirty days after discovering the violation, whichever comes first. These violations are ongoing and likely to recur.

107.    Finally, Cascade violated Condition F.D6 of the Permit each and every day since July 22, 2021 by failing to report its noncompliance with its Permit, as required by those permit conditions.

108.    Condition F.D6 of the Permit require Cascade to report all instances of noncompliance with the permit not reported under General Condition D4 or D5 at the time Cascade submits monitoring reports. Each noncompliance report must include: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue if it has not been corrected; and (4) the steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance.

109.    As alleged herein, Cascade has violated the Permit each and every day since July 22, 2021. Cascade violated Condition F.D6 of the Permit each and every day since July 22, 2021 by failing to prepare and submit noncompliance reports that fully and accurately identify Cascade's noncompliance with the Permit and that include all the required information. These violations are ongoing and likely to recur.

COMPLAINT - Page 27

**SIXTH CLAIM FOR RELIEF:**

**Violations of General Permit Conditions in the 1200-Z Permit
(Conditions F.A1, F.A3, and F.B1)**

110.    The allegations of each preceding paragraph are incorporated herein as if restated in full.

111.    Each and every Permit violation alleged above is also a violation of Condition F.A1 of the Permit, which requires Cascade to comply with all conditions of its Permit.

112.    Additionally, each and every Permit violation above is a violation of Condition F.A3 of the Permit, which requires Cascade to take all reasonable steps to minimize or prevent any discharge in violation of the Permit.

113.    Cascade violated Conditions F.A1 and F.A3 each and every day since July 22, 2021 by violating the Permit and by failing to take reasonable steps to minimize or prevent discharges in violation of the Permit.

114.    Further, each and every Permit violation alleged above is also a violation of Condition F.B1 of the Permit, which requires Cascade to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) that are installed or used by the permittee to achieve compliance with the conditions" of the Permit.

115.    Cascade violated these permit conditions each and every day since July 22, 2021 by failing to properly operate and maintain all systems of treatment and control, including Cascade's SWPCP, to achieve compliance with the Permit.

## REQUEST FOR RELIEF

NEDC requests the Court grant the following relief:

1.    Declare that Cascade's violations of the 1200-Z Permit were and are unlawful under the Clean Water Act;

2.    Assess a civil penalty against Cascade in the amount of $68,445 per day for each and every Permit violation, as authorized by 33 U.S.C. §§ 1365, 1319 and 40 CFR § 19.4;

3.    Enjoin Cascade's ongoing violations of the 1200-Z Permit and the Clean Water Act;

4.    Award NEDC its costs of litigation, including its reasonable attorney and expert witness fees, as authorized by 33 U.S.C. § 1365(a) and (d); and

5.    Grant NEDC such further relief as the Court may deem appropriate.


Dated: January 16, 2026.


                                        *s/ James N. Saul*
                                        James N. Saul (OSB #152809)
                                        Wild & Scenic Law Center
                                        3519 NE 15th Ave., #207
                                        Portland, OR 97212
                                        (503) 342-2839
                                        jamie@wildandsceniclaw.org

                                        *Counsel for Plaintiff*


COMPLAINT - Page 29



**Jamie Saul**
Executive Director
Wild & Scenic Law Center
3519 NE 15th Ave., #207
Portland, OR 97212
Ph: (503) 342-2839
jamie@wildandsceniclaw.org

August 25, 2025

*Via Certified Mail—Return Receipt Requested*

Donald Roemer
Cascade Auto Recycling, LLC
2207 NE Industry Drive
Grants Pass, OR 97526

**RE:    Notice of Intent to File Suit under the Clean Water Act for Violations of the 1200-Z Permits at Cascade Metal Recycling's Grants Pass Facility**

Dear Mr. Roemer:

On behalf of the Northwest Environmental Defense Center ("NEDC"), I write to provide you with notice of NEDC's intent to sue Cascade Auto Recycling LLC, dba Cascade Metal Recycling ("Cascade"), for violations of the Clean Water Act at its Grants Pass facility, located at 2207 NE Industry Drive, Grants Pass, Oregon 97526 (hereinafter "the Facility"). The Facility is currently regulated, and authorized to discharge pollutants, by the National Pollutant Discharge Elimination System ("NPDES") 1200-Z Permit, Permit Number 34213. As detailed below, Cascade has violated and continues to violate various terms and conditions of the 1200-Z Permit at the Facility.

Unless Cascade resolves its ongoing permit violations to NEDC's satisfaction, NEDC intends to file suit against Cascade in U.S. District Court immediately following the expiration of the required sixty-day notice period. NEDC intends to seek injunctive relief and civil penalties in the amount of up to $68,445 per day for all violations identified herein and for any additional, similar violations that NEDC may discover subsequently. *See* 33 U.S.C. §§ 1365, 1319(d); 40 C.F.R. § 19.4.

## I.    BACKGROUND

### A.    Facility Background

Cascade performs metal recycling activities at the Facility under SIC Code 5093 ("Scrap and Waste Materials"). According to the December 28, 2021 revision of

CWA Notice Letter to
Cascade Metal Recycling
Page 1 of 17

**EXHIBIT A**

the Facility's Stormwater Pollution Control Plan, Cascade also provides scrap metal hauling services and sells used vehicle tires. The Facility is located within the city limits of Grants Pass, Oregon.

When Cascade was granted coverage under the 1200-Z Permit in 2021, the Facility consisted of two drainage areas. The first area drains the Facility's main lot at 2207 NE Industry Drive, and Cascade discharges stormwater associated with industrial activity from this area to the City of Grants Pass municipal stormwater system, which then discharges to Skunk Creek and then the Rogue River. A second area drained a leased property just east of the main lot, at 2251 NE Spalding Avenue. Stormwater from the leased property discharged to a stormwater drainage trench, and then to Jones Creek. NEDC believes that in 2023 Cascade ceased operations on the leased property and now operates only on the main lot.

## B.     The 1200-Z NPDES Permitting Scheme

Congress enacted the Clean Water Act of 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In doing so, Congress declared a national goal of eliminating discharges of pollutants to navigable waters by 1985. Section 301 of the CWA prohibits the discharge of pollutants, except, inter alia, in accordance with the terms of a NPDES permit issued pursuant to Section 402 of the Act.

The State of Oregon implements a federally approved NPDES permit program administered by the Oregon Department of Environmental Quality (ODEQ). ODEQ periodically issues a general NPDES permit authorizing discharges of stormwater associated with industrial activity in Oregon. For facilities that obtain coverage under it, ODEQ's General Stormwater Discharge Permit Number 1200-Z authorizes discharges of industrial stormwater, provided the discharges are in compliance with the terms and conditions of the permit. ODEQ's current 1200-Z NPDES Permit took effect July 1, 2021 (hereinafter the "Permit").[1]

The Permit authorizes Cascade to discharge stormwater associated with industrial activity, provided the discharges are "in conformance with all the requirements, limitations, and conditions set forth" in the Permit. Permit at 2. Any noncompliance with the Permit "constitutes a violation of . . . the Clean Water Act . . . and is grounds for enforcement action[.]" *See* Permit Schedules A.14.a and F.A1.

---

[1] The Permit was modified on August 17, 2022, and again on July 20, 2023, in ways that do not materially affect NEDC's allegations stated herein. *See* ODEQ, Industrial Stormwater Permits, *at* https://www.oregon.gov/deq/wq/wqpermits/pages/stormwater-industrial.aspx.

CWA Notice Letter to
Cascade Metal Recycling
Page 2 of 17

The Permit establishes specific requirements that the permit registrant must follow to ensure the protection of Oregon's waters. To begin with, the permit registrant must properly prepare, implement, and keep its SWPCP updated and current. There are a number of requirements that must be included in the SWPCP, including a site description, adequate site controls that eliminate or minimize exposure of pollutants to stormwater, and recordkeeping, sampling, and reporting procedures. *See* Permit Schedule A.10.

A SWPCP's effectiveness is determined by comparing stormwater monitoring results with Permit benchmarks. The benchmarks are numeric concentration levels set for certain pollutants, which provide a standard that determines whether a facility's SWPCP is effectively reducing or eliminating stormwater pollution in compliance with the CWA's Technology Based Effluent Limit ("TBEL") standards and Water Quality Based Effluent Limit ("WQBEL") standards. *See* Permit Sch. A.5. Visual monitoring for floating solids and oil and grease sheen provides an additional means for assessing whether the SWPCP is effective. *See* Permit Sch. B.12.a.vii.

In no event may any facility authorized to discharge pursuant to the 1200-Z Permit cause or contribute to a violation of water quality standards. *See* Permit Sch. A.3.a; *see also* 33 U.S.C. § 1311.

## II.    VIOLATIONS OF THE CLEAN WATER ACT

The CWA's citizen suit provision authorizes any citizen (including nongovernmental organizations like NEDC) to file a federal lawsuit against any person (including a corporation or other business entity) "alleged to be in violation of an effluent standard or limitation" under the Act, which includes by definition "a permit or condition thereof issued under" the Act's NPDES permit program. 33 U.S.C. § 1365(a)(1), (f). All terms and conditions of a state-issued NPDES permit such as the 1200-Z Permit are enforceable via federal citizen suits. *See, e.g., Nw. Envtl. Advocates v. City of Portland*, 56 F.3d 979, 986 (9th Cir. 1995); *Or. State Pub. Interest Research Grp., Inc. v. Pac. Coast Seafoods Co.*, 361 F. Supp. 2d 1232, 1236, 1238 (D. Or. 2005).

Cascade has violated and is violating Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and is in violation of an "effluent standard or limitation" under the Act, *id.* § 1365(a)(1), by discharging pollutants and stormwater associated with industrial activity from the Facility in violation of the terms and conditions of the 1200-Z Permits. This letter provides notice of NEDC's intent to sue over the following specific violations at the Facility.

CWA Notice Letter to
Cascade Metal Recycling
Page 3 of 17

## A.    Violations of the Narrative, Technology-Based Effluent Limitations, and the Control Measures Required to Meet Those Limits

Schedule A.1 of the Permit requires Cascade to meet the Permit's listed narrative technology-based effluent limits. The narrative technology-based effluent limits in Schedule A.1 of the Permit require Cascade, among other things, to "minimize exposure of manufacturing, processing, [and] material storage areas . . . to rain, snow, snowmelt and runoff" (Sch. A.1.a); to employ measures to eliminate or minimize oil and grease contamination of stormwater discharges (Sch. A.1.b); to "recycle or properly dispose of wastes to eliminate or minimize exposure of pollutants to stormwater" (Sch. A.1.c); to "stabilize exposed areas . . . and contain runoff using structural and nonstructural controls to minimize erosion of soil at the site and sedimentation" (Sch. A.1.d); to "employ screens, booms, settling ponds, or other methods to eliminate or minimize waste, garbage and floatable debris in stormwater discharges and ensure that this debris is not discharged to receiving waters" (Sch. A.1.e); to "minimize generation of dust, off-site tracking and discharge of soil, particulates and raw, final or waste materials" (Sch. A.1.f); to "routinely clean all exposed areas that may contribute pollutants to stormwater with measures such as sweeping at regular intervals, litter pick-up, keeping materials orderly and labeled, promptly clean-up spills and leaks, proper maintenance of vehicles and stowing materials in appropriate containers" (Sch. A.1.g); to minimize the potential for spills and develop spill prevention and response plans (Sch. A.1.h); to regularly inspect, clean, maintain, and repair all equipment, systems, areas, and stormwater control measures (Sch. A.1.i); and to develop and maintain an employee education program on the components and goals of the SWPCP (Sch. A.1.j). Schedule E, Sector N (Scrap and Waste Materials) of the Permit identifies additional sector-specific requirements that Cascade must meet, including additional requirements related to inbound recyclable and waste material control, scrap and waste material stockpiles and storage, scrap and recyclable waste processing areas, proper handling and storage of scrap lead-acid batteries, spill prevention and response procedures, and notification to major suppliers regarding which scrap materials will not be accepted at the facility.

Additionally, Schedule A.2.a of the Permit requires Cascade to "select, design, install, implement and maintain control measures . . . to meet the narrative technology-based effluent limits in Schedule A.1, and Schedule E, and numeric technology-based effluent limitations guidelines in Schedule B.1 of this permit [and to] describe these measures . . . in the SWPCP." Perhaps most importantly, Schedule A.2.b of the Permit requires Cascade to "reduce or eliminate pollutants to the extent achievable using control measures that are technologically available and economically practicable and achievable in light of best industry practice."

CWA Notice Letter to
Cascade Metal Recycling
Page 4 of 17

1. *Specific Violations Documented by Agency Personnel*

DEQ staff have documented several violations of the above permit conditions. During a March 26, 2025 inspection, DEQ staff observed the following violations of the Permits' narrative technology-based effluent limits:

- Failure to minimize exposure per Schedule A.1.a, with sediment covering much of the Facility's paved areas and catch basins that needed to be cleaned;
- Failure to control oil and grease per Schedule A.1.b, with DEQ noting the Facility "has a layer of oil and grease, along with sediment build up making the facility not function properly";
- Failure to recycle or properly dispose of wastes to eliminate or minimize exposure of pollutants to stormwater, per Schedule A.1.c, with vehicles being dismantled on the lower property and no information regarding where the fluids from these vehicles were being stored;
- Failure to implement required erosion and sediment controls, per Schedule A.1.d, with "the stormwater facility…filled with sediment";
- Failure to implement methods to control debris, per Schedule A.1.e, with uncontrolled debris in the lower recycling area and the Outfall 002 collection ditch and pipe;
- Failure to minimize generation of dust, off-site tracking and discharge of soil and other materials per Schedule A.1.f;
- Failure to implement housekeeping measures per Schedule A.1.g, including failure to clean all exposed areas that may contribute pollutants to stormwater;
- Failure to implement adequate spill prevention and response procedures, per Schedule A.1.h, including by releasing oil and grease to the Facility and failing to hire a spill response cleanup contractor to clean up the contaminated soil;
- Failure to implement preventative maintenance measures per Schedule A.1.i, including failure to properly maintain the catch basins leading to the stormwater detention pond and not placing filters around the catch basins and performing general weeding of the stormwater detention pond;
- Failure to implement employee education, per Schedule A.1.j, with DEQ noting that no employee education training had occurred; and
- Failure to eliminate any non-stormwater discharges not authorized by a NPDES permit, per Schedule A.1.k

On March 26, 2025, Cascade was in violation of Schedules A.1, A.2.a, and A.2.b of the Permit because on that day Cascade failed to comply with the Permit's

CWA Notice Letter to
Cascade Metal Recycling
Page 5 of 17

narrative technology-based effluent limits listed above. Cascade violated these same permit requirements each and every other day since July 22, 2021 when Cascade failed to minimize exposure to stormwater, including allowing sediment to accumulate on paved areas and catch basins; when Cascade failed to adequately control oil and grease, including days when oil and grease was present at the site and not promptly cleaned; when Cascade failed to recycle or properly dispose of wastes to eliminate or minimize exposure of pollutants to stormwater, including days when vehicles were dismantled without proper storage for these vehicles' fluids; when Cascade failed to implement required erosion and sediment controls; when Cascade failed to implement adequate methods to control debris; when Cascade failed to minimize generation of dust, off-site tracking and discharge of soil and other materials; when Cascade failed to perform adequate housekeeping measures at the Facility, including days when Cascade failed to clean all exposed areas that may contribute pollutants to stormwater; when Cascade failed to implement adequate spill prevention and response procedures, including days when oil and gas spills were present and not cleaned at the Facility; when Cascade failed to implement and record adequate preventative maintenance activities at the site, including days when Cascade did not properly maintain all catch basins and days when the stormwater detention pond was not weeded or otherwise properly maintained; when Cascade failed to implement employee education as required by the Permit; and when Cascade failed to eliminate all unauthorized non-stormwater discharges.

> 2. *Cascade's Stormwater Discharges Regularly Exceed Numeric Benchmarks in the 1200-Z Permit, Demonstrating Ongoing Failures to Comply with the Permit.*

Water quality sampling conducted by Cascade at the Facility demonstrates that Cascade has violated and continues to violate Schedules A.1 and E.N.1 of the Permits. Schedule A.5.a-b of the Permit explains that benchmarks are screening concentrations, exceedances of which require the permittee to assess "whether site controls are effectively reducing pollutant concentrations in stormwater discharges." Schedule B.2 of the Permit establishes the following statewide benchmarks applicable to Cascade: total copper 0.017 mg/L; total lead 0.039 mg/L; total zinc 0.086 mg/L; pH 5.5-9.0 s.u.; and total suspended solids 100 mg/L.[2] Additionally, Schedule E.N.3 of the Permit establishes the following sector-specific benchmarks applicable to Cascade: total aluminum 1.10 mg/L; and Chemical

---

[2] These benchmarks apply because Cascade's Facility is located in the Coastal Georegion. *See* Letter from LeeAnn Gates, ODEQ, to Dan Roemer, Cascade Metal Recycling, Re: Issuance of NPDES Permit Number 1200-Z (July 22, 2021) ("Permit Assignment Letter").

Oxygen Demand 120 mg/L. Cascade has repeatedly failed to meet these benchmarks, as indicated in Table 1 below:

| Table 1 Benchmark Exceedances Reported by Cascade Metal Recycling Under the 2021 1200-Z Permit | | | | | | | |
|---|---|---|---|---|---|---|---|
| Pollutant | | Aluminum, Total | Copper, Total | Zinc, Total | Lead, Total | Chemical Oxygen Demand | pH |
| Permit Benchmarks | Outfall | 1.1 mg/L | 0.017 mg/L | 0.086 mg/L | .039 mg/L | 120 mg/L | 5.5-9 SU |
| 12/13/21 | 001 | 2.7516 | .0494 | .4587 | .0487 | | |
| 12/13/21 | 002 | 1.345 | .0245 | .2715 | | | |
| 12/28/21 | 001 | | | .1629 | | | |
| 12/28/21 | 002 | | | .1603 | | | |
| 04/04/2022 | 001 | | .0325 | .2541 | | | |
| 04/04/2022 | 002 | | .0414 | .2492 | .0581 | | |
| | | | | | | | |
| 11/01/2022 | 001 | | .0324 | .1785 | | | |
| 11/01/2022 | 002 | | | .2061 | | | |
| | | | | | | | |
| 03/29/2023 | 001 | 1.286 | | .5307 | .1763 | | |
| 03/29/2023 | 002 | | .0232 | .1522 | .0651 | | |
| 05/02/2023 | 001 | | | | | | 10.15 |
| 05/02/2023 | 002 | | .0573 | .3990 | | | 10.25 |
| 10/25/2023 | 001 | | .0254 | .1881 | | | |
| 01/26/2024 | 001 | 1.1217 | .0393 | .4411 | | | |
| 10/30/2024 | 001 | 1.2356 | .0494 | .396 | | 220 | |
| 01/31/25 | 001 | | .0253 | .1722 | | | |
| 05/13/25 | 001 | | .0428 | .5521 | | 183 | |

NEDC recognizes that an exceedance of a numeric benchmark is not, in and of itself, a permit violation. *See* Permit Sch. A.5.a. However, the history and pattern of Cascade's stormwater sample results that have consistently and significantly exceeded the statewide and sector-specific benchmarks are evidence that Cascade has violated, and continues to violate, the Permit by failing to comply with the narrative technology-based effluent limits in Schedules A.1 and E.N.1 of the Permit, and by failing to select, design, install, implement, and maintain control measures necessary to meet those limits, in violation of Schedule A.2.a of the Permit These violations have occurred each and every day since July 22, 2021 and are ongoing.

Additionally, the history and pattern of significant benchmark exceedances demonstrate that Cascade's site controls are not effectively minimizing pollutants in stormwater discharged from the Facility, and are not reducing or eliminating pollutants to the extent achievable, in violation of Schedule A.2.b of the 2021 Permit. These violations have occurred each and every day since July 22, 2021 on

which there was 0.1 inch or more of precipitation because, on information and belief, on those days Cascade discharged pollutants in stormwater from the Facility and had not reduced or eliminated those pollutants to the extent achievable. As shown in the table attached hereto as Appendix A, there have been at least 263 such dates between July 22, 2021 and the date of this letter.[3] These violations are ongoing, and will recur on each date where the Facility receives at least 0.1 inch of precipitation.

## B.     SWPCP Violations

Schedule A.2.a of the Permit requires Cascade to describe its pollutant control measures, maintenance schedules, and the frequency of housekeeping measures in its SWPCP. Schedule A.8.c of the Permit requires Cascade to include in its SWPCP each narrative technology-based effluent limit to eliminate or reduce the potential to contaminate stormwater and prevent any violation of instream water quality standards. Schedule A.10 of the Permit sets forth the requirements for SWPCPs, including in Schedule A.10.b.vi of the Permit the requirement that SWPCPs include a description of control measures installed and implemented to meet the technology and water quality based requirements in Schedules A.1-A.4 and any applicable sector-specific requirements in Schedule E. Schedule E.N.2 of the Permit sets forth additional sector-specific requirements for Cascade's SWPCP. Schedule A.8.d of the Permit then requires Cascade to implement the SWPCP and any revisions to it.

At its March 26, 2025 inspection, DEQ staff documented several ways in which Cascade has failed and is failing to implement its SWPCP in violation of Schedule A.8.d of the Permit. On that date, Cascade was failing to implement several stormwater pollution controls described in Section 7.0 of Cascade's SWPCP dated June 21, 2021 (revised December 28, 2021), including required preventative maintenance actions (Sections 7.1.1 and 7.4), actions required to minimize exposure of pollutants to stormwater (Section 7.1.2), actions required to control oil and grease (Section 7.1.3), actions to properly recycle or dispose of waste chemicals and other materials (Section 7.1.4), actions required to control erosion and sediment at the Facility (Section 7.1.5), actions required to control debris (Section 7.1.7), several housekeeping measures (Section 7.1.9), implementation of Cascade's spill prevention and response measures plan (Section 7.1.10), and required stormwater

---

[3] Appendix A contains a table of precipitation data obtained from the website of the National Oceanic and Atmospheric Administration's (NOAA) National Centers for Environmental Information (https://www.ncei.noaa.gov). The dataset has been refined and sorted to include only those dates with 0.1" or greater precipitation between July 22, 2021 and the date of this letter recorded at Grants Pass, Oregon (Station ID No. USC00353445).

CWA Notice Letter to
Cascade Metal Recycling
Page 8 of 17

system maintenance and cleaning actions (Section 7.1.13). Further, Cascade had failed to implement the required employee stormwater education and training program described in Section 6.0 of its SWPCP. Each of these failures to implement control measures or practices described in the SWPCP is a violation of Schedule A.8.d of the Permit. These violations occurred on March 26, 2025, and every other day that Cascade failed to implement each of the SWPCP's required control measures and practices.

In addition, Cascade violated Schedules A.2.a, A.8.c, A.10, and A.8.d of the Permit and every day since July 22, 2021 by failing to maintain and implement an adequate SWPCP at the Facility. The extensive benchmark exceedances documented in Table 1, the extensive water quality violations described herein, and ongoing discharges of polluted industrial stormwater from the Facility demonstrate that Cascade is not maintaining or implementing a SWPCP that includes adequate control measures and all of the required SWPCP components. Each day Cascade has operated with an inadequate SWPCP, including each and every day since July 22, 2021, is a violation of Schedules A.2.a, A.8.c, A.10, and A.8.d of the Permit. These violations are ongoing.

## C.    Violations of Monitoring and Reporting Requirements

Schedule B.2 of the Permit states that the permit registrant must monitor stormwater discharges for various statewide benchmarks, including pH, total copper, total lead, total zinc, and total suspended solids. Schedule B.6 of the Permit emphasizes that "[t]he permit registrant must monitor for: the applicable statewide benchmark pollutants identified in [Table 4 of the] permit," along with any applicable sector-specific pollutants. Schedule E.N.3 and Cascade's July 22, 2021 2021 permit assignment letter identify aluminum and chemical oxygen demand as sector-specific pollutants Cascade must monitor for. Schedule B.7.f and Table 6 of the Permit require Cascade to monitor stormwater discharges for the above-mentioned pollutants "Four times per year, two samples between January 1 and June 30, and two samples between July 1 and December 31." Schedules B.13 and B.14 of the Permit then require Cascade to submit all monitoring results to DEQ via Discharge Monitoring Reports ("DMRs"). These DMRs are due quarterly, on or before the deadlines in Table 7 of the Permit, even if there was no discharge during a quarter.

Cascade violated the monitoring requirements in Schedule B of the Permit. Records made available to NEDC indicate that, during the 2021-2022 monitoring year, Cascade only took 3 of the 4 required samples for statewide benchmark parameters, and 3 out of 4 required samples for sector-specific parameters required by Schedule N of the permit. Next, during the 2022-2023 monitoring year, Cascade only took 2 out of 4 required samples for statewide benchmark parameters and

CWA Notice Letter to
Cascade Metal Recycling
Page 9 of 17

sector-specific parameters at Outfall 001, and only 3 of 4 required samples for statewide benchmark parameters and sector-specific parameters at Outfall 002. During the 2023-24 monitoring year, Cascade only took 2 of 4 required samples for statewide benchmark parameters and sector-specific parameters. And during the 2024-25 monitoring year, Cascade only took 1 of the required 2 samples for statewide benchmark and sector-specific parameters between July 1, 2024 and December 31, 2024. Each of these failures to monitor for the applicable statewide benchmarks and applicable sector-specific pollutants is a violation of Schedules B.2 and B.7.f of the Permit.

Cascade also violated the reporting requirements in Schedule B of the Permit. On several occasions, Cascade failed to submit DMRs to DEQ by the Permit's deadlines in Table 7, including the DMRs due on the following dates: August 15, 2022; November 15, 2022; February 15, 2023; May 15, 2023; August 15, 2023; November 15, 2023; February 15, 2024; May 15, 2024; and August 15, 2024. Each of these failures to submit a DMR by the applicable deadline is a violation of Schedules B.13 and B.14 of the Permit.

**D.      Violations of Inspection Requirements**

Schedule B.12 of the Permit requires Cascade to perform monthly inspections of "areas where industrial materials or activities are exposed to stormwater and areas where stormwater control measures, structures, catch basins, and treatment facilities are located." Per Schedule B.12.a.vi of the Permit, these inspections must include "visual observation for the presence of floating and suspended solids, color, foam, visible oil sheen, or other obvious indicators of pollution in the stormwater discharge at all discharge point(s)..." When these observations show evidence of such stormwater pollution, Cascade must complete a Tier I corrective action report. Per Schedule B.12.c of the Permit, these visual observations "must be conducted during a discharge event if one occurs during the month, regardless of whether the monthly site inspection has already occurred." Inspections must include all discharge points. And Schedule B.12.i of the Permit requires Cascade to document all inspections in an inspection report that includes certain specific information and that is retained on site and submitted to ODEQ upon request.

Cascade has violated these inspection requirements. During the DEQ site inspection on March 26, 2025, DEQ staff documented that Cascade had failed to perform required monthly or visual inspections. NEDC further alleges that, upon information and belief, Cascade has failed to perform monthly and visual inspections each and every month since obtaining coverage under the 1200-Z Permit on July 22, 2021, in violation of Schedule B.12 of the 2021 Permit.

**E.     Violations of Water Quality Based Effluent Limitations**

Cascade violated the Permits and the Clean Water Act by discharging pollutants and stormwater associated with industrial activity in an amount or manner that causes or contributes to violations of the instream water quality standards established in Oregon Administrative Rule ("OAR") 340-041 for Skunk Creek and the Rogue River, in violation of Schedules A.3 and F.A6 of the Permit. Schedule A.3.a of the Permit prohibits Cascade from causing or contributing to a violation of instream water quality standards as established in Oregon Administrative Rules 340-041. And Schedules F.A6 of the Permit requires Cascade to comply with any applicable effluent standards or prohibitions established under OAR 340-041-0033 for toxic pollutants.

OAR 340-041-007(1) states that "the highest and best practicable treatment and/or control of wastes, activities, and flows must in every case be provided so as to maintain…toxic materials…at the lowest possible levels." OAR 340-041-0033(1) prohibits the introduction of toxic substances above natural background levels in concentrations and/or combinations that may be harmful to public health, safety, aquatic life, and wildlife. And OAR 340-041-0033(2) states that levels of toxic substances in waters of the state may not exceed the applicable aquatic life criteria as defined in Table 30 under OAR 340-041-8033. ODEQ established these and other water quality standards to protect human health and other important beneficial uses such as recreation, drinking water sources, and habitat for salmon and steelhead. Or. Rev. Stat. §§ 468B.015, 468B.048.

The Permit used these water quality standards to establish benchmark concentrations for toxic pollutants including copper, zinc, aluminum, and lead. Table 30 in OAR 340-041-8033 identifies the concentrations of toxic pollutants that may be harmful to aquatic life. In the Permit ODEQ used the copper, zinc, aluminum, and lead criteria in Table 30 to establish benchmarks for those pollutants applicable to Cascade.

Cascade has violated and continues to violate Schedules A.3.a and F.A6 of the Permit by discharging toxic pollutants from the Facility in amounts or manners that cause or contribute to violations of the narrative and numeric water quality standards identified above. First, Cascade has violated and is violating Schedule F.A6 by introducing copper, zinc, aluminum, and lead above natural background levels in concentrations that may be harmful to public health, safety, aquatic life, and wildlife (OAR 340-041-0033(1)). These violations have occurred each and every day since July 22, 2021 on which there was 0.1 inch or more of precipitation at the Facility because, on information and belief, on those days Cascade discharged industrial stormwater from the Facility that contained copper, zinc, aluminum, and/or lead in excess of the benchmarks for those pollutants established in the

CWA Notice Letter to
Cascade Metal Recycling
Page 11 of 17

Permit. As shown in Appendix A, there have been at least 263 such dates between July 22, 2021 and the date of this letter. At a minimum, these violations occurred on each of the following dates when Cascade discharged stormwater and reported concentrations that exceeded one or more of the Permit's benchmarks for one or more toxic pollutants: December 13, 2021; December 28, 2021; April 4, 2022; November 1, 2022; March 29, 2023; May 2, 2023; October 25, 2023; January 26, 2024; October 30, 2024; January 31, 2025; and May 13, 2025. These violations are ongoing, and will recur on each date where the Facility receives at least 0.1 inch of precipitation.

Further, Cascade has violated and is violating Schedule F.A6 by failing to provide the highest and best practicable treatment and/or control of wastes, activities, and flows so as to maintain the lowest possible levels of toxic pollutants. As indicated in Tables 1 and 2 above, discharges from the Facility regularly contain elevated concentrations of the toxic pollutants copper, zinc, aluminum, and lead, indicating that Cascade is not providing the highest and best practical treatments and controls at the Facility to maintain the lowest possible levels of toxic pollutants. These violations have occurred each and every day since July 22, 2021 on which there was 0.1 inch or more of precipitation at the Facility because, on information and belief, on those days Cascade discharged industrial stormwater from the Facility that contained copper, zinc, aluminum, and/or lead in excess of the benchmarks for those pollutants established in the Permits. As shown in Appendix A, there have been at least 263 such dates between July 22, 2021 and the date of this letter. At a minimum, these violations occurred on each of the following dates when Cascade discharged stormwater and reported concentrations that exceeded one or more of the applicable Permit's benchmarks for one or more toxic pollutants: December 13, 2021; December 28, 2021; April 4, 2022; November 1, 2022; March 29, 2023; May 2, 2023; October 25, 2023; January 26, 2024; October 30, 2024; January 31, 2025; and May 13, 2025. These violations are ongoing, and will recur on each date where the Facility receives at least 0.1 inch of precipitation.

## F.    Violations of Requirements to Take Corrective Actions and Related Reporting Requirements.

Cascade violated the Permits by failing to comply with various requirements to undertake corrective action responses and submit corrective action reports. As explained below, this includes violations of Tier I corrective action requirements in Schedule A.11 of the Permit, violations of SWPCP corrective action requirements in Schedule A.2 of the Permit, and violations of corrective action requirements for water quality standard violations in Schedule A.3 of the Permit.

CWA Notice Letter to
Cascade Metal Recycling
Page 12 of 17

### 1.    *Tier I corrective action violations.*

Schedule A.11 of the Permit requires Cascade to undertake a Tier I corrective action response each time a stormwater monitoring result exceeds any statewide or sector-specific benchmark, or when visual observations show signs of pollution in the discharge. Specifically, that permit condition requires Cascade, within 30 days of obtaining monitoring results demonstrating a benchmark exceedance or completing a monthly visual inspection showing signs of pollution in the discharge, to: (1) investigate the cause of the elevated pollutant levels and develop a plan for controlling significant materials from previous operations; (2) review the SWPCP and evaluate the selection, design, installation and implementation of control measures to ensure compliance with the permit, including evaluating whether any previous pollutant source isolation actions are complete and whether additional modifications are necessary; (3) evaluate treatment measures, infiltration devices and mass reduction measures to see if they were properly installed, maintained and implemented and whether maintenance, correction or modifications are necessary; and (4) assess and implement these corrective actions at all substantially similar discharge points.

Per Schedule A.11.c.v of the Permit, a Tier I report must include (1) the results of its investigation into the cause of elevated pollutant levels; (2) corrective actions taken or to be taken, or, if determined that no corrective action is necessary, the basis for this determination; and (3) documentation of whether SWPCP revisions are necessary. Schedule A.11.d.i of the Permit then requires Cascade to implement necessary corrective actions before the next storm event, if possible, or no later than 30 days after receiving the monitoring results, whichever comes first.

NEDC alleges that Cascade has routinely violated Schedules A.11.c. and A.11.d of the Permit by either failing to complete a Tier I corrective action response, including a Tier I corrective action report, or by failing to perform an adequate corrective action response, including by submitting inadequate Tier I corrective action reports. The history and pattern of ongoing and significant benchmark exceedances demonstrated in Table 1 indicates that Cascade has repeatedly failed and is presently failing to (a) perform adequate investigations of the cause of benchmark exceedances; (b) perform a sufficient review of its SWPCP and evaluation of the selection, design, installation and implementation of its control measures; (c) evaluate the Facility's treatment measures and determine whether maintenance, correction, or modifications to those measures are necessary; and (d) implement adequate and necessary corrective actions before the next storm event or no later than 30 days after receiving the monitoring results. These violations have occurred each and every day since February 1, 2021, and are ongoing.

CWA Notice Letter to
Cascade Metal Recycling
Page 13 of 17

### 2. *SWPCP corrective action violations.*

Schedule A.2.f of the 2021 Permit states:

If modifications to the control measures are necessary to meet technology-based effluent limits in this permit, the permit registrant must implement the modifications before the next storm event if practicable or no later than 30 calendar days from discovering the violation, unless DEQ or agent approve a later date.

Cascade's failure to minimize pollutant loadings in its stormwater discharges, as illustrated in Section II.A, *supra*, demonstrates that Cascade has violated and is violating this requirement by failing to take sufficient corrective actions, including revision of its SWPCP and implementation of modified control measures, even though such corrective actions are necessary to meet the effluent limits in the Permits. These violations have occurred each and every day since February 1, 2022 and are ongoing.

### 3. *Water quality standard corrective action violations.*

Schedule A.3.b of the Permit requires Cascade to take certain actions upon becoming aware that a discharge from the Facility caused or contributed to an exceedance of water quality standards, including: investigating the conditions that triggered the violation; reviewing the SWPCP to ensure compliance with the permit; submitting a Water Quality Standards Report within 30 days of receiving the relevant monitoring data, which report must meet certain criteria stated in the Permit; and implementing any required corrective actions before the next storm event or within 30 days after discovering the violation, whichever comes first.

As explained in Section II.E, *supra*, Cascade has routinely caused or contributed to an exceedance of narrative water quality standards for several toxic pollutants. On each of these instances, Cascade has violated Schedule A.3.b of the Permit by failing to comply with the investigation, reporting, and corrective action requirements in those permit conditions. Cascade violated these requirements each and every day since February 1, 2022 by failing to implement Tier I corrective action responses in the required time frame; failing to review the SWPCP to ensure compliance with the permit; failing to submit each and every required Water Quality Standards Report within 30 days of receiving the relevant monitoring data; and failing to implement required corrective actions before the next storm event or within 30 days after discovering the violation, whichever comes first.

CWA Notice Letter to
Cascade Metal Recycling
Page 14 of 17

**G.      Violations for Failing to Prepare and Submit Noncompliance Reports.**

Cascade violated Schedule F.D6 of the Permit each and every day since February 10, 2022 (the date Cascade submitted its first DMR to DEQ) by failing to report its noncompliance with the Permit, as required by that Permit condition. Schedules F.D6 of the Permit requires Cascade to report all instances of noncompliance with the permit not reported under General Condition D4 or D5 at the time Cascade submits monitoring reports. Each noncompliance report must include: (1) a description of the noncompliance and its cause; (2) the period of noncompliance, including exact dates and times; (3) the estimated time the noncompliance is expected to continue if it has not been corrected; and (4) the steps taken or planned to reduce, eliminate, and prevent reoccurrence of the noncompliance. As described in this letter, Cascade has violated the Permits each and every day since July 22, 2021. Cascade violated Schedules F.D6 of the Permit each and every day since February 10, 2022 by failing to prepare and submit noncompliance reports that fully and accurately identify Cascade's noncompliance with the Permit and that include all the required information.

**H.      Violations of General Conditions.**

Each and every permit violation described herein is also a violation of Schedules F.A1 of the Permit, which requires Cascade to comply with all conditions of its Permit. Additionally, each and every permit violation described herein is a violation of Schedules F.A3 of the Permit, which requires Cascade to take all reasonable steps to minimize or prevent any discharge in violation of the Permit. Cascade violated these permit conditions each and every day since July 22, 2021 by violating the Permit and by failing to take reasonable steps to minimize or prevent discharges in violation of the Permit.

Each and every Permit violation described herein is also a violation of Schedules F.B1 of the Permit, which requires Cascade to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) that are installed or used by the permittee to achieve compliance with the conditions" of the Permit. Cascade violated these permit conditions each and every day since July 14, 2022 by failing to properly operate and maintain all systems of treatment and control, including Cascade's SWPCP, to achieve compliance with the Permit.

### III.    PERSONS GIVING NOTICE

The full name, address, and telephone number of the party giving notice is:

      Northwest Environmental Defense Center
      10101 S. Terwilliger Blvd.
      Portland, OR 97219
      Tel: (503) 768-6726

However, we request that you contact NEDC only through its undersigned attorneys, whose contact information is as follows:

| | |
|---|---|
| James N. Saul | Jonah Sandford |
| Wild and Scenic Law Center | Northwest Environmental Defense Center |
| 3519 NE 15th Ave., #207 | 10101 S. Terwilliger Blvd. |
| Portland, OR 97212 | Portland, OR 97219 |
| Tel: (503) 342-2839 | Tel: (503) 768-6726 |
| jamie@wildandsceniclaw.org | jonah@nedc.org |

### IV.    CONCLUSION

The permit violations described and alleged in this notice of intent to sue are ongoing and violate the Clean Water Act. At the conclusion of the 60-day notice period, NEDC intends to file a lawsuit against Cascade under the citizen suit provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. Each of the above-described violations subjects the violator to a penalty of up to $68,445 per day. *See* 40 CFR § 19.4. In addition to civil penalties, NEDC will seek injunctive relief to prevent further violations and such other relief as is permitted by law, including recovery of NEDC's costs, attorneys' fees, and expert witness fees. *See* 33 U.S.C. §§ 1365(a) and (d). Although the above-described violations reflect the information currently available to NEDC, NEDC intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice letter.

During the 60-day notice period NEDC will be willing to discuss effective remedies for the violations described in this letter. If you wish to pursue settlement discussions in the absence of litigation, we suggest that you initiate discussions within 10 days of receiving this notice so the parties can meet and discuss effective remedies for the violations alleged herein. NEDC does not intend to delay the filing of a complaint if discussions are ongoing when the notice period ends.

Sincerely,

James N. Saul
Wild & Scenic Law Center

Jonah Sandford
Northwest Environmental Defense Center

**Copies Sent via Certified U.S. Mail to:**

Director Leah Feldon
Oregon Department of Environmental Quality
700 NE Multnomah St., Suite 600
Portland, OR 97232

Administrator Lee Zeldin
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Mail Code 1101A
Washington, DC 20460

Regional Administrator Emma Pokon
U.S. EPA, Region 10
1200 Sixth Avenue, Suite 155
Seattle, WA 98101

CWA Notice Letter to
Cascade Metal Recycling
Page 17 of 17

**APPENDIX A:**

**Precipitation > 0.1" at Grants Pass, Oregon**
**July 22, 2021 – August 22, 2025**

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 5/13/25 | 0.24 |
| USC00353445 | GRANTS PASS, OR US | 5/12/25 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 4/26/25 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 4/7/25 | 0.46 |
| USC00353445 | GRANTS PASS, OR US | 4/2/25 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 4/1/25 | 0.32 |
| USC00353445 | GRANTS PASS, OR US | 3/31/25 | 0.62 |
| USC00353445 | GRANTS PASS, OR US | 3/28/25 | 0.34 |
| USC00353445 | GRANTS PASS, OR US | 3/20/25 | 0.15 |
| USC00353445 | GRANTS PASS, OR US | 3/17/25 | 2.11 |
| USC00353445 | GRANTS PASS, OR US | 3/16/25 | 1.44 |
| USC00353445 | GRANTS PASS, OR US | 3/15/25 | 0.77 |
| USC00353445 | GRANTS PASS, OR US | 3/13/25 | 0.84 |
| USC00353445 | GRANTS PASS, OR US | 3/3/25 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 3/2/25 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 2/25/25 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 2/24/25 | 0.9 |
| USC00353445 | GRANTS PASS, OR US | 2/23/25 | 0.82 |
| USC00353445 | GRANTS PASS, OR US | 2/20/25 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 2/17/25 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 2/16/25 | 0.13 |
| USC00353445 | GRANTS PASS, OR US | 2/14/25 | 0.35 |
| USC00353445 | GRANTS PASS, OR US | 2/7/25 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 2/6/25 | 0.54 |
| USC00353445 | GRANTS PASS, OR US | 2/5/25 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 2/4/25 | 1.03 |
| USC00353445 | GRANTS PASS, OR US | 2/2/25 | 0.59 |
| USC00353445 | GRANTS PASS, OR US | 2/1/25 | 0.89 |
| USC00353445 | GRANTS PASS, OR US | 1/31/25 | 0.44 |
| USC00353445 | GRANTS PASS, OR US | 1/11/25 | 0.13 |
| USC00353445 | GRANTS PASS, OR US | 1/6/25 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 1/4/25 | 0.31 |

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 1/3/25 | 0.48 |
| USC00353445 | GRANTS PASS, OR US | 1/2/25 | 0.29 |
| USC00353445 | GRANTS PASS, OR US | 1/1/25 | 0.5 |
| USC00353445 | GRANTS PASS, OR US | 12/30/24 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 12/29/24 | 2.1 |
| USC00353445 | GRANTS PASS, OR US | 12/28/24 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 12/27/24 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 12/26/24 | 0.67 |
| USC00353445 | GRANTS PASS, OR US | 12/25/24 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 12/24/24 | 2.02 |
| USC00353445 | GRANTS PASS, OR US | 12/23/24 | 0.36 |
| USC00353445 | GRANTS PASS, OR US | 12/22/24 | 0.29 |
| USC00353445 | GRANTS PASS, OR US | 12/21/24 | 0.38 |
| USC00353445 | GRANTS PASS, OR US | 12/17/24 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 12/16/24 | 0.32 |
| USC00353445 | GRANTS PASS, OR US | 12/14/24 | 1.49 |
| USC00353445 | GRANTS PASS, OR US | 12/12/24 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 12/8/24 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 11/26/24 | 0.97 |
| USC00353445 | GRANTS PASS, OR US | 11/25/24 | 0.15 |
| USC00353445 | GRANTS PASS, OR US | 11/24/24 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 11/23/24 | 0.62 |
| USC00353445 | GRANTS PASS, OR US | 11/22/24 | 1.19 |
| USC00353445 | GRANTS PASS, OR US | 11/21/24 | 1.39 |
| USC00353445 | GRANTS PASS, OR US | 11/20/24 | 1.07 |
| USC00353445 | GRANTS PASS, OR US | 11/19/24 | 0.15 |
| USC00353445 | GRANTS PASS, OR US | 11/18/24 | 0.58 |
| USC00353445 | GRANTS PASS, OR US | 11/17/24 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 11/15/24 | 0.38 |
| USC00353445 | GRANTS PASS, OR US | 11/14/24 | 1.08 |
| USC00353445 | GRANTS PASS, OR US | 11/13/24 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 11/12/24 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 11/11/24 | 0.33 |
| USC00353445 | GRANTS PASS, OR US | 11/2/24 | 0.79 |
| USC00353445 | GRANTS PASS, OR US | 10/31/24 | 0.55 |
| USC00353445 | GRANTS PASS, OR US | 10/29/24 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 10/28/24 | 0.17 |

CWA Notice Letter
Appendix A
Page 2 of 8

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 10/21/24 | 0.27 |
| USC00353445 | GRANTS PASS, OR US | 10/17/24 | 0.2 |
| USC00353445 | GRANTS PASS, OR US | 8/24/24 | 0.51 |
| USC00353445 | GRANTS PASS, OR US | 8/18/24 | 0.49 |
| USC00353445 | GRANTS PASS, OR US | 5/5/24 | 0.42 |
| USC00353445 | GRANTS PASS, OR US | 5/4/24 | 0.35 |
| USC00353445 | GRANTS PASS, OR US | 4/26/24 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 4/15/24 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 4/14/24 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 4/4/24 | 0.13 |
| USC00353445 | GRANTS PASS, OR US | 3/29/24 | 0.13 |
| USC00353445 | GRANTS PASS, OR US | 3/28/24 | 0.8 |
| USC00353445 | GRANTS PASS, OR US | 3/27/24 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 3/24/24 | 0.33 |
| USC00353445 | GRANTS PASS, OR US | 3/23/24 | 0.34 |
| USC00353445 | GRANTS PASS, OR US | 3/12/24 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 3/11/24 | 0.7 |
| USC00353445 | GRANTS PASS, OR US | 3/6/24 | 0.37 |
| USC00353445 | GRANTS PASS, OR US | 3/5/24 | 1.23 |
| USC00353445 | GRANTS PASS, OR US | 3/1/24 | 1.54 |
| USC00353445 | GRANTS PASS, OR US | 2/29/24 | 0.32 |
| USC00353445 | GRANTS PASS, OR US | 2/27/24 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 2/20/24 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 2/19/24 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 2/18/24 | 0.31 |
| USC00353445 | GRANTS PASS, OR US | 2/16/24 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 2/15/24 | 1.12 |
| USC00353445 | GRANTS PASS, OR US | 2/14/24 | 0.23 |
| USC00353445 | GRANTS PASS, OR US | 2/7/24 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 2/6/24 | 0.32 |
| USC00353445 | GRANTS PASS, OR US | 2/5/24 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 2/2/24 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 2/1/24 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 1/28/24 | 0.77 |
| USC00353445 | GRANTS PASS, OR US | 1/27/24 | 0.62 |
| USC00353445 | GRANTS PASS, OR US | 1/26/24 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 1/24/24 | 0.2 |

CWA Notice Letter
Appendix A
Page 3 of 8

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 1/23/24 | 0.14 |
| USC00353445 | GRANTS PASS, OR US | 1/22/24 | 0.57 |
| USC00353445 | GRANTS PASS, OR US | 1/21/24 | 0.45 |
| USC00353445 | GRANTS PASS, OR US | 1/17/24 | 0.62 |
| USC00353445 | GRANTS PASS, OR US | 1/14/24 | 1.11 |
| USC00353445 | GRANTS PASS, OR US | 1/13/24 | 0.25 |
| USC00353445 | GRANTS PASS, OR US | 1/11/24 | 0.23 |
| USC00353445 | GRANTS PASS, OR US | 1/10/24 | 0.29 |
| USC00353445 | GRANTS PASS, OR US | 1/9/24 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 1/7/24 | 0.42 |
| USC00353445 | GRANTS PASS, OR US | 1/6/24 | 0.45 |
| USC00353445 | GRANTS PASS, OR US | 1/5/24 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 1/4/24 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 1/3/24 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 12/30/23 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 12/28/23 | 0.34 |
| USC00353445 | GRANTS PASS, OR US | 12/25/23 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 12/20/23 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 12/19/23 | 0.47 |
| USC00353445 | GRANTS PASS, OR US | 12/18/23 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 12/8/23 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 12/7/23 | 0.7 |
| USC00353445 | GRANTS PASS, OR US | 12/3/23 | 0.89 |
| USC00353445 | GRANTS PASS, OR US | 12/2/23 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 12/1/23 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 11/19/23 | 0.72 |
| USC00353445 | GRANTS PASS, OR US | 11/15/23 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 11/6/23 | 0.78 |
| USC00353445 | GRANTS PASS, OR US | 11/5/23 | 2.6 |
| USC00353445 | GRANTS PASS, OR US | 11/2/23 | 0.14 |
| USC00353445 | GRANTS PASS, OR US | 10/26/23 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 10/25/23 | 0.25 |
| USC00353445 | GRANTS PASS, OR US | 10/23/23 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 10/11/23 | 0.2 |
| USC00353445 | GRANTS PASS, OR US | 9/26/23 | 1.08 |
| USC00353445 | GRANTS PASS, OR US | 9/3/23 | 0.22 |
| USC00353445 | GRANTS PASS, OR US | 9/2/23 | 0.23 |

CWA Notice Letter
Appendix A
Page 4 of 8

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 6/20/23 | 0.53 |
| USC00353445 | GRANTS PASS, OR US | 6/19/23 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 5/8/23 | 0.33 |
| USC00353445 | GRANTS PASS, OR US | 5/3/23 | 0.21 |
| USC00353445 | GRANTS PASS, OR US | 4/18/23 | 0.33 |
| USC00353445 | GRANTS PASS, OR US | 4/11/23 | 0.28 |
| USC00353445 | GRANTS PASS, OR US | 4/9/23 | 0.23 |
| USC00353445 | GRANTS PASS, OR US | 4/7/23 | 0.31 |
| USC00353445 | GRANTS PASS, OR US | 4/3/23 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 4/1/23 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 3/29/23 | 0.42 |
| USC00353445 | GRANTS PASS, OR US | 3/28/23 | 1.03 |
| USC00353445 | GRANTS PASS, OR US | 3/26/23 | 1.2 |
| USC00353445 | GRANTS PASS, OR US | 3/24/23 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 3/19/23 | 0.2 |
| USC00353445 | GRANTS PASS, OR US | 3/15/23 | 0.44 |
| USC00353445 | GRANTS PASS, OR US | 3/14/23 | 1.48 |
| USC00353445 | GRANTS PASS, OR US | 3/13/23 | 0.55 |
| USC00353445 | GRANTS PASS, OR US | 3/10/23 | 0.83 |
| USC00353445 | GRANTS PASS, OR US | 3/8/23 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 3/5/23 | 0.29 |
| USC00353445 | GRANTS PASS, OR US | 2/28/23 | 0.55 |
| USC00353445 | GRANTS PASS, OR US | 2/23/23 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 2/22/23 | 0.24 |
| USC00353445 | GRANTS PASS, OR US | 2/15/23 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 2/6/23 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 2/5/23 | 0.39 |
| USC00353445 | GRANTS PASS, OR US | 1/19/23 | 0.76 |
| USC00353445 | GRANTS PASS, OR US | 1/15/23 | 0.85 |
| USC00353445 | GRANTS PASS, OR US | 1/14/23 | 0.59 |
| USC00353445 | GRANTS PASS, OR US | 1/13/23 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 1/12/23 | 0.54 |
| USC00353445 | GRANTS PASS, OR US | 1/11/23 | 0.27 |
| USC00353445 | GRANTS PASS, OR US | 1/9/23 | 0.27 |
| USC00353445 | GRANTS PASS, OR US | 1/8/23 | 0.33 |
| USC00353445 | GRANTS PASS, OR US | 12/31/22 | 0.96 |
| USC00353445 | GRANTS PASS, OR US | 12/30/22 | 0.48 |

CWA Notice Letter
Appendix A
Page 5 of 8

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 12/29/22 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 12/28/22 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 12/27/22 | 1.96 |
| USC00353445 | GRANTS PASS, OR US | 12/25/22 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 12/23/22 | 0.27 |
| USC00353445 | GRANTS PASS, OR US | 12/11/22 | 0.35 |
| USC00353445 | GRANTS PASS, OR US | 12/10/22 | 0.9 |
| USC00353445 | GRANTS PASS, OR US | 12/9/22 | 0.32 |
| USC00353445 | GRANTS PASS, OR US | 12/1/22 | 0.45 |
| USC00353445 | GRANTS PASS, OR US | 11/12/22 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 11/9/22 | 0.2 |
| USC00353445 | GRANTS PASS, OR US | 11/8/22 | 0.15 |
| USC00353445 | GRANTS PASS, OR US | 11/7/22 | 1.16 |
| USC00353445 | GRANTS PASS, OR US | 11/6/22 | 0.35 |
| USC00353445 | GRANTS PASS, OR US | 11/5/22 | 0.27 |
| USC00353445 | GRANTS PASS, OR US | 11/2/22 | 0.42 |
| USC00353445 | GRANTS PASS, OR US | 11/1/22 | 0.42 |
| USC00353445 | GRANTS PASS, OR US | 10/23/22 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 9/22/22 | 0.74 |
| USC00353445 | GRANTS PASS, OR US | 9/20/22 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 6/18/22 | 0.31 |
| USC00353445 | GRANTS PASS, OR US | 6/13/22 | 0.6 |
| USC00353445 | GRANTS PASS, OR US | 6/12/22 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 6/5/22 | 0.71 |
| USC00353445 | GRANTS PASS, OR US | 5/10/22 | 0.13 |
| USC00353445 | GRANTS PASS, OR US | 5/9/22 | 0.21 |
| USC00353445 | GRANTS PASS, OR US | 5/8/22 | 0.25 |
| USC00353445 | GRANTS PASS, OR US | 5/7/22 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 5/6/22 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 5/2/22 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 4/30/22 | 0.29 |
| USC00353445 | GRANTS PASS, OR US | 4/29/22 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 4/21/22 | 0.92 |
| USC00353445 | GRANTS PASS, OR US | 4/20/22 | 0.31 |
| USC00353445 | GRANTS PASS, OR US | 4/19/22 | 0.42 |
| USC00353445 | GRANTS PASS, OR US | 4/16/22 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 4/14/22 | 0.43 |

CWA Notice Letter
Appendix A
Page 6 of 8

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 4/13/22 | 0.23 |
| USC00353445 | GRANTS PASS, OR US | 4/12/22 | 0.45 |
| USC00353445 | GRANTS PASS, OR US | 4/11/22 | 0.27 |
| USC00353445 | GRANTS PASS, OR US | 4/5/22 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 4/4/22 | 0.21 |
| USC00353445 | GRANTS PASS, OR US | 3/20/22 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 3/19/22 | 0.28 |
| USC00353445 | GRANTS PASS, OR US | 3/15/22 | 0.41 |
| USC00353445 | GRANTS PASS, OR US | 3/13/22 | 0.36 |
| USC00353445 | GRANTS PASS, OR US | 3/3/22 | 0.3 |
| USC00353445 | GRANTS PASS, OR US | 2/28/22 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 2/22/22 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 1/7/22 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 1/5/22 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 1/4/22 | 1.2 |
| USC00353445 | GRANTS PASS, OR US | 12/29/21 | 0.17 |
| USC00353445 | GRANTS PASS, OR US | 12/28/21 | 0.12 |
| USC00353445 | GRANTS PASS, OR US | 12/27/21 | 0.28 |
| USC00353445 | GRANTS PASS, OR US | 12/26/21 | 0.64 |
| USC00353445 | GRANTS PASS, OR US | 12/25/21 | 0.58 |
| USC00353445 | GRANTS PASS, OR US | 12/24/21 | 0.36 |
| USC00353445 | GRANTS PASS, OR US | 12/23/21 | 0.61 |
| USC00353445 | GRANTS PASS, OR US | 12/22/21 | 0.18 |
| USC00353445 | GRANTS PASS, OR US | 12/20/21 | 0.11 |
| USC00353445 | GRANTS PASS, OR US | 12/16/21 | 0.85 |
| USC00353445 | GRANTS PASS, OR US | 12/14/21 | 0.95 |
| USC00353445 | GRANTS PASS, OR US | 12/13/21 | 0.71 |
| USC00353445 | GRANTS PASS, OR US | 12/12/21 | 1.12 |
| USC00353445 | GRANTS PASS, OR US | 12/7/21 | 0.29 |
| USC00353445 | GRANTS PASS, OR US | 11/19/21 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 11/16/21 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 11/9/21 | 0.64 |
| USC00353445 | GRANTS PASS, OR US | 11/6/21 | 0.32 |
| USC00353445 | GRANTS PASS, OR US | 11/5/21 | 0.14 |
| USC00353445 | GRANTS PASS, OR US | 11/4/21 | 0.65 |
| USC00353445 | GRANTS PASS, OR US | 10/31/21 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 10/30/21 | 0.36 |

CWA Notice Letter
Appendix A
Page 7 of 8

| Station ID | Station Name | Date | Precipitation (in.) |
|---|---|---|---|
| USC00353445 | GRANTS PASS, OR US | 10/26/21 | 0.1 |
| USC00353445 | GRANTS PASS, OR US | 10/25/21 | 0.76 |
| USC00353445 | GRANTS PASS, OR US | 10/24/21 | 0.16 |
| USC00353445 | GRANTS PASS, OR US | 10/22/21 | 0.78 |
| USC00353445 | GRANTS PASS, OR US | 10/20/21 | 0.66 |
| USC00353445 | GRANTS PASS, OR US | 10/6/21 | 0.19 |
| USC00353445 | GRANTS PASS, OR US | 9/28/21 | 0.26 |
| USC00353445 | GRANTS PASS, OR US | 9/19/21 | 0.96 |
| USC00353445 | GRANTS PASS, OR US | 9/18/21 | 0.37 |